UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARJAN TADAYYON, *et al.*, | Case No. 2:24-cv-2387-JDP |
| Plaintiffs, | |
| v. | ORDER |
| MARCO RUBIO, *et al.*, | |
| Defendants. | |

Plaintiffs Marjan Tadayyon and Seyed Hossein Ayatollahi Moyssavi, husband and wife, bring this action against Marco Rubio, in his official capacity as U.S. Secretary of State, and Robert Jachim, in his official capacity as Acting Director of Screening, Analysis, and Coordination, for unreasonably delaying adjudication of their immigrant visa applications.[1] Defendants have filed a motion to dismiss, or, in the alternative, for summary judgment. The court finds that there has been no unreasonable delay in adjudicating plaintiffs' visa application and thus will grant defendants' motion.

---

[1] Defendants Rubio and Jachim were automatically substituted for Anthony Blinken and Carson Wu, respectively, under Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d); ECF No. 17 (for defendant Jachim).

1

**Background**

**I.    Statutory and Regulatory Framework**

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of three broad categories of visas: family-based, employment-based, and diversity. 8 U.S.C. § 1151(a). Relevant here are family-based visas. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1201(a)(1)(A); 22 C.F.R. §§ 42.21, 42.42. For a family-based immigrant visa, the sponsoring U.S. citizen must first file a "Petition for Alien Relative (Form I-130)" with the United States Citizenship and Immigration Services ("USCIS"). 8 U.S.C. § 1154. Once USCIS approves the I-130 form, it transfers the petition to the National Visa Center ("NVC") for preprocessing. The beneficiary may then begin the visa application process by submitting a DS-260 Online Immigrant Visa and Alien Registration Application. 9 Foreign Affairs Manual (FAM) § 504.1-2(a)(1)). After the beneficiary completes the DS-260 and submits all the necessary forms and fees to the NVC, the NVC determines whether an applicant is documentarily complete. 9 FAM § 504.1-2(b)(2).

Once the NVC determines an applicant is documentarily complete and the applicable consular officer completes all the "necessary clearance procedures," the applicant is considered documentarily qualified. 22 C.F.R. § 40.1(h). This means that the applicant is qualified "to apply formally for an immigrant visa[.]" *Id.* For an immigrant visa applicant, to "[m]ake or file an application for a visa" means, in relevant part, "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on . . . Form DS-260[.]" *Id.* § 40.1(l). The NVC schedules interviews at the applicable overseas consular post "in the chronological order of the documentarily complete applicants." 9 FAM 504.1-2(d)(1). During the interview, an applicant can formally apply for an immigrant visa by swearing to or affirming the contents of the DS-260 and signing it before a consular officer. 22 C.F.R. § 42.67(a). The INA provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Once an application is properly completed and executed before a consular officer, the officer must either issue or refuse to issue a visa. *See* 22 C.F.R. § 42.81(a).

The consular officer "may require the submission of additional information or question the alien on any relevant matter whenever the officer believes that the information provided . . . is inadequate to determine the alien's eligibility to receive an immigrant visa." 22 C.F.R. § 42.63(c). Such information may be provided through Form DS-5535, Supplemental Questions for Visa Applicants. *See* 60-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 88 Fed. Reg. 65,418 (Sept. 22, 2023). Any additional material submitted is "considered part of the immigrant visa application." 22 C.F.R. § 42.63(c). If the applicant produces additional evidence "tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." *Id.* § 42.81(e).

## II. Factual Allegations

Plaintiff Tadayyon is a lawful permanent resident. ECF No. 1 at 3. Tadayyon received approval for a Form I-130 on behalf of her spouse, plaintiff Moussavi, who is an Iranian citizen living in Iran. *Id.* On September 21, 2021, Moussavi filed a Form DS-260, and on June 10, 2022, he was deemed documentarily qualified and eligible for an interview. *Id.* Moussavi was initially scheduled for an interview in Ankara, Turkey, but he asked that the interview be transferred to Yerevan, Armenia. *Id.* at 20. On March 4, 2024, Moussavi attended an immigration visa interview in Yerevan, but the consular officer informed Moussavi that his case required further administrative processing. *Id.* The officer asked Moussavi to provide additional information in a Form DS-5535, which he did on March 14, 2024. *Id.* Despite Moussavi's timely DS-5535 response, his application has remained pending administrative processing since March 4, 2024. *Id.* at 21.

Plaintiffs allege that the delay in adjudicating Moussavi's visa application has had substantial impact on their family. *Id.* Plaintiffs first point out that Iran is a harsh geopolitical area, which the U.S. Department of State has labeled a Level 4 country, indicating that it is unsafe for U.S. citizens. *Id.* The area's instability has also made it difficult for Tadayyon to visit Mousavvi. *Id.* at 23. Plaintiffs indicate that the difficulty of the situation has been compounded by the fact that the couple share a minor child, who has been separated from Moussavi. *Id.*

Plaintiffs bring three causes of action arising from this delay. The first seeks a writ of

3

1  mandamus compelling defendants to act on plaintiffs' visa application within a reasonable time,

2  pursuant to the INA and federal regulations. *Id*. at 25. The second seeks to have the court

3  enforce the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b), and to find that defendants

4  have unreasonably delayed their visa applications. *Id.* at 27. The third alleges that defendants'

5  delay violates the Mandamus Act. *Id.* at 31.

6  **Legal Standards**

7  **A. Motion to Dismiss**

8  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable

9  legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v.*

10 *Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint

11 must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

12 on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

13 550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff "pleads factual content

14 that allows the court to draw the reasonable inference that the defendant is liable for the

15 misconduct alleged." *Iqbal*, 556 U.S. at 678.

16 The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404

17 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint "if it

18 appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

19 would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017).

20 However, "'a liberal interpretation of a civil rights complaint may not supply essential elements

21 of the claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251,

22 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

23 **B. Motion for Summary Judgment**

24 Summary judgment is appropriate where there is "no genuine dispute as to any material

25 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington*

26 *Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine

27 only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party,

28 while a fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The same standards apply to both a motion for summary judgment and a motion for summary adjudication. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing either that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 323). The nonmoving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact

1  conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a
2  jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*
3  *v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).
4      The court must apply standards consistent with Rule 56 to determine whether the moving
5  party has demonstrated there to be no genuine issue of material fact and that judgment is
6  appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
7  "[A] court ruling on a motion for summary judgment may not engage in credibility
8  determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.
9  2017) (citation omitted). The evidence must be viewed "in the light most favorable to the
10 nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.
11 *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*,
12 198 F.3d 1130, 1134 (9th Cir. 2000).

**Analysis**

14     Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), or, in the
15 alternative, for summary judgment under Rule 56. ECF No. 9. Defendants seek dismissal for
16 three main reasons. First, defendants argue that the doctrine of consular nonreviewability
17 precludes judicial review of a U. S. consular official's decision to refuse a visa application of a
18 noncitizen. *Id.* at 8. Second, defendants argue that they do not owe plaintiffs a nondiscretionary
19 duty to act since the allocation of consular services is discretionary. *Id.* at 11. And, finally,
20 defendants argue that the five- or seven-month delay plaintiffs have experienced is not
21 unreasonable under the TRAC factors. *Id.* at 13.
22     For their part, plaintiffs argue that the doctrine of consular nonreviewability does not
23 preclude judicial review of this action because plaintiffs' visa application has not been finally
24 adjudicated. ECF No. 10 at 12. Plaintiffs next argue that defendants owe them a
25 nondiscretionary duty to provide a final adjudication on the visa application. *Id.* at 40. Lastly,
26 plaintiffs assert that, while it is premature at this stage of the case to assess whether the delay is
27 unreasonable, should the court consider the merits of the delay under the TRAC factors, they have
28 stated a valid claim. *Id.* at 50.

6

### A. Doctrine of Consular Nonreviewability

The Ninth Circuit has recognized that "ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018). However, courts in this district and others have held that the doctrine does not apply where plaintiffs seek a final decision on their visa applications rather than judicial review of a final decision. *See Abbassi v. Gaudiosi*, No. 1:23-CV-01573-CDB, 2024 WL 1995246, at *4 (E.D. Cal. May 6, 2024) (citing cases); *Mohamed v. Pompeo*, No. 1:19-cv-01345-LJO-SKO, 2019 WL 4734927, at *2 (E.D. Cal. Sept. 27, 2019).

Accepting plaintiffs' allegations as true, defendants' failure, to date, to issue decisions on plaintiffs' visa applications under INA § 221(g) does not amount to a final decision. *See Kiani v. Blinken*, No. CV 23-5069-GW-JCX, 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024); *Gonzalez v. Baran*, No. 2:21-CV-05902-CAS-ASX, 2022 WL 1843148, at *3 (C.D. Cal. Jan. 11, 2022) ("[T]he 'administrative processing' designation [under § 221(g) is] insufficient to constitute a refusal"). In the absence of Ninth Circuit precedent to the contrary, the court finds that the doctrine of consular nonreviewability does not bar plaintiffs' claims. *See Abbassi*, 2024 WL 1995246, at *4 (agreeing with the "prevailing position among most other district courts" that the doctrine does not bar review of a visa application in administrative processing); *Iqbal v. Blinken*, No. 2:23-CV-1299-KJM-CSK, 2024 WL 3904959, at *7, 2024 U.S. Dist. LEXIS 151121 (E.D. Cal. Aug. 22, 2024) ("The court joins with the courts that have found the refusal of a visa application for administrative processing does not constitute a final decision.").

### B. APA and Mandamus Act

The INA does not set a deadline for consular officers to review and adjudicate visa applications, but under the APA, defendants have a duty to act within a "reasonable time." *See* 5 U.S.C. § 555. "[T]he APA and related case law provide 'law to apply' in determining whether defendants have failed to act within a reasonable time." *Khan v. Johnson*, 65 F. Supp. 3d 918, 926 (C.D. Cal. 2014). "[F]ederal courts routinely assess the 'reasonableness' of the pace of agency action under the APA." *Id.* (citation omitted). Under the APA, the reviewing court must "compel agency action . . . unreasonably delayed[.]" 5 U.S.C. § 706(1). "A court can compel

agency action under this section only if there is a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (internal marks and citation omitted). "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" *Id.* at 1075-76 (citation omitted).

The Mandamus Act "provides district courts with mandamus power 'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361). "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA." *Id.* (quoting *Japan Whaling Ass'n v. Am. Cetacean Society*, 478 U.S. 221, 230 n.4 (1986)). "Because the relief sought is essentially the same, in the form of mandamus," the court analyzes the sufficiency of the complaint under the APA. *Id.*

In determining whether an agency action has been unreasonably delayed, courts consider the six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138-39 (9th Cir. 2020) (*quoting Telecomms. Research and Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984)).

Although not determinative, the first factor, "rule of reason," is the most important. *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). Courts consider the length of the delay and the

1   cause of the delay in assessing "whether there is any rhyme or reason for the Government's
2   delay—in other words, whether the agency's response time . . . is governed by an identifiable
3   rationale." *Poursohi v. Blinken*, No. 21-01960, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16,
4   2021) (internal marks and citation omitted).  Where Congress has not supplied a period for
5   agency action, courts look to case law in assessing whether the agency's action is unreasonably
6   delayed.  *See Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June
7   10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a
8   guide.").

9         Here, approximately six months elapsed between the last government action (when the
10  consular officer refused plaintiff's visa application with the administrative processing designation
11  on March 4, 2024) and the filing of the complaint on September 4, 2024.  ECF 1.  In the context
12  of unreasonable delay involving visa application processing, delay is measured from the time that
13  plaintiffs attended the interview, not the time that they filed the visa petition.  *See Ferdowski v.*
14  *Blinken*, No. 8:23-cv-01123-JWH-KES, 2024 WL 685912, at *4 & n.26 (C.D. Cal. Feb. 12, 2024)
15  (citing *Shahijani*, 2023 WL 6889774, at *3).  Generally, courts have found 'immigration delays in
16  excess of five, six, [and] seven years are unreasonable, while those between three to five years are
17  often not unreasonable.'"  *Ortiz v. U.S. Dep't of State*, Case No. 22-cv-0508-AKB, 2023 WL
18  4407569 *8 (D. Idaho July 7, 2023).  More than one court has concluded that a delay of slightly
19  more than a year is "drastically short of what constitutes an unreasonable delay in the Ninth
20  Circuit."  *Id.* (quoting *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8
21  (C.D. Cal. Oct. 10, 2019)).

22        To date, approximately one year has passed since plaintiff's application was initially
23  refused.  "[I]n the immigration context, district courts have generally found delays of less than
24  four years are not unreasonable."  *Iqbal v. Blinken*, No. 2:23-cv-1299-KJM-CSK, 2024 WL
25  3904959, at *10 (E.D. Cal. Aug. 22, 2024) (collecting cases).  Existing case law supports the
26  view that, however burdensome a delay of a year in this context may be may be, such a delay
27  does not violate the APA.  *See Ali v. Ordeman*, No. 2:23-cv-02822 CKD, 2024 WL 2274912, at
28  *6 (E.D. Cal. May 20, 2024); *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 162 (D.D.C. 2021) (delay

of 29 months at the point of filing suit after being placed in "administrative processing" following consular interview was not unreasonable); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (citing case law suggesting that even a five- to ten-year delay in the immigration context may be reasonable); *Beyene v. Napolitano*, No. 12-cv-1149-WHA, 2012 WL 2911838, at *9 (N.D. Cal. July 13, 2012) (holding that while the "case presents a close call," a delay of nearly five years in adjudicating the plaintiff's application for adjustment of immigration status was not unreasonable); *Jamal v. Johnson*, No 2:15-CV-8088-ODW (AFMx), 2016 WL 4374773, at *6 (C.D. Cal. Aug. 15, 2016) (noting that delays of four years not unreasonable, but holding that delay of over seven years to adjudicate the plaintiff's application for adjustment of status, combined with defendants' unwillingness to indicate if or when plaintiff's petition will be adjudicated, was unreasonable); *Ou v. Johnson*, No. 15-cv-03936-BLF, 2016 WL 7238850, at *3 (N.D. Cal. Feb. 16, 2016) (noting that "courts in this district have generally found delays of four years or less not to be unreasonable under the APA"); *Zhang v. Cissna*, No. 18-cv-09696-MWF, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) ("[T]he Court cannot conclude, as a matter of law, that [four-year] delay in processing [asylum] application was unreasonable."); *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661, at *8 (N.D. Cal. May 25, 2011) (point of unreasonableness had "not yet come" after three-year delay for adjustment of status).  The first factor thus weighs in defendants' favor.

For the second TRAC factor, the court considers whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute[.]" *In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1138.  Congress has not provided a timetable for processing immigration visa applications.  *Cf.* 8 U.S.C. § 1158(d)(5)(A)(ii) (another provision of the INA requiring interviews to "commence not later than 45 days after the date an application is filed" for asylum cases).  Rather, "Congress has given the State Department and other agencies wide discretion in the area of immigration processing." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 318 (D.D.C. 2020) (internal marks and citation omitted).  Here, there is no statutorily mandated timeline for the Department to process plaintiff's visa case.  *See Dastagir*, 557 F. Supp. 3d at 166 (noting that there is "no statutory or regulatory

10

timeframe" for processing immediate family immigrant visa applications). Therefore, this factor is neutral. *See Poursohi*, 2021 WL 5331446, at *9 ("[T]he absence of a mandatory timetable for adjudication of Plaintiffs' Application combined with the fact that the delay comports with the rule of reason, the second TRAC factor also weighs in Defendant's favor or is at least neutral.").

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." *Poursohi*, 2021 WL 5331446, at *9. Plaintiffs argue that the delay has caused physical, emotional, and financial stress. ECF No. 10 at 63. Defendants do not assert any argument for or against this factor. ECF No. 9 at 21. Considering the allegations of Plaintiffs' emotional, physical, and financial suffering, in addition to the instability of Iran, the court finds that this factor cuts in favor of plaintiffs. *See Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345, 1363 (E.D. Cal. 2020) (finding the third and fifth TRAC factors in favor of the plaintiffs because of the escalating threats of war between Iran and the United States and the allegations of emotional, physical, and financial harm caused by the separation).

Under the fourth TRAC factor, the court considers the effect of expediting the adjudication of plaintiff's application on other agency action of higher or competing priority. *Kapoor v. Blinken*, No. 21-CV-01961-BLF, 2022 WL 181217, at *8 (N.D. Cal. Jan. 20, 2022). This factor favors the defendants; plaintiffs are not alone in their circumstances, and ordering defendants to prioritize plaintiff's application only further delays the resolution of other applications. *Ali*, 2024 WL 2274912, at *6, *Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *5 (W.D. Wash. Apr. 5, 2023) (noting many families face delays and ordering the State Department to schedule the beneficiary plaintiff's interview would not ameliorate the situation); *Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *6 (N.D. Cal. June 16, 2021) ("Most courts have found that the fourth TRAC factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain."). The fourth factor weighs in favor of defendants.

Under the sixth TRAC factor, where a plaintiff has not made cognizable allegations of impropriety, "courts in the Ninth Circuit have found this factor to either weigh in the

government's favor or to be neutral." *Poursohi*, 2021 WL 5331446, at *11. Plaintiffs have set forth no such allegations, and the sixth TRAC factor weighs neutrally.

After considering the TRAC factors, the court finds that plaintiffs' unreasonable delay claims must fail. Even assuming that the allegations of the complaint are sufficient to satisfy factors three and five, the alleged delay cannot as a matter of law be considered unreasonable at this time. Plaintiffs' circumstances are not unprecedented, and courts in this circuit faced with facts similar to those in this case—visa delays measuring under two years while placed in administrative processing—have consistently held that the lawsuits fail under the TRAC factors. *Ali*, 2024 WL 2274912 at *7 (14-month delay), *Morales v. Mayorkas*, 23-cv-1758 BEN-MSB, 2024 WL 2884554 (S.D. Cal. June 7, 2024) (17-month delay); *Abassi v. Gaudiosi*, 1:23-cv-01573-CDB, 2024 WL 1995246 (E.D. Cal. May 6, 2024) (12-month delay); *Tenorio v. Bitter*, No. 23-cv-1581-KK-SHKX, 2024 WL 2873754 (C.D. Cal. May 1, 2024) (17-month delay).

As set forth above, a claim seeking mandamus under the Mandamus Act closely resembles one for relief under § 706 of the APA. *Japan Whaling Ass'n*, 478 U.S. at 230 n.4. Because an adequate remedy exists under the APA, the court has analyzed plaintiffs' claim of delay under the APA only. *See Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022). For the reasons set forth above, the court also grants defendants' motion as to the Mandamus Act claim.

Accordingly, it is hereby ORDERED that:

1. Defendants' motion to dismiss and for summary judgment, ECF No. 9, is GRANTED.
2. Judgment is entered in defendants' favor.
3. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   May 16, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE